IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| FLYING DOG BREWERY, LLLP | ) | Case No. 1:11-CV-00307-RJJ |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN REPLY TO |
| v. | ) | DEFENDANTS' OPPOSITION TO |
| | ) | PLAINTIFF'S MOTION FOR |
| MICHIGAN LIQUOR CONTROL | ) | PRELIMINARY INJUNCTION |
| COMMISSION, et al., | ) | |
| | ) | ARGUMENT: June 8, 2011 |
| Defendants. | ) | 4:00 p.m. |
| | ) | |
| _____ | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COMES NOW the Plaintiff, Flying Dog Brewery, LLLP, by and through undersigned

counsel, and submits its Memorandum of Points and Authorities in Reply to Defendants'

Opposition to its Motion for Preliminary Injunction.

Dated: May 23, 2011          Respectfully Submitted,

Alan Gura
GURA & POSSESSKY, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax: 703.997.7665
alan@gurapossessky.com


By:     /s/ Alan Gura_____
Alan Gura

Attorneys for Plaintiff Flying Dog Brewery, LLLP

TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      Administrative and Judicial Exhaustion Are Not Required to Seek
        Federal Review of Federal Civil Rights Violations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     Flying Dog's Beer Label Does Not Remotely Approach First Amendment
        Incitement Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    Flying Dog's Label Contains Protected Artistic Expression. . . . . . . . . . . . . . . . . . . . . . . 6

IV.     Flying Dog's Label Is Protected Even As Commercial Speech. . . . . . . . . . . . . . . . . . . . . 8

V.      Political Correctness Is Not A Valid Regulatory Interest. . . . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TABLE OF AUTHORITIES

Cases

*Ashcroft* v. *Free Speech Coalition*,
        535 U.S. 234 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

*Bolger* v. *Youngs Prods. Corp.*,
        463 U.S. 60 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Bosley* v. *WildWetT.com*,
        70 U.S.P.Q.2d 1537, 2004 U.S. App. LEXIS 11028 (6th Cir. Apr. 21, 2004). . . . . . . . 8, 9

*Brandenburg* v. *Ohio*,
        395 U.S. 444 (1969) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Carey* v. *Population Servs. Int'l*,
        431 U.S. 678 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*City of Lakewood* v. *Plain Dealer Publishing Co.*,
        486 U.S. 750 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Desert Outdoor Advertising* v. *City of Moreno Valley*,
        103 F.3d 814 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dorr* v. *Weber*,
        741 F. Supp. 2d 1010 (N.D. Ia. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Dworkin* v. *Hustler Magazine, Inc.*,
        867 F.2d 1188 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Search of Kitty's East*,
        905 F.2d 1367 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*James* v. *Meow Media, Inc.*,
        300 F.3d 683 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*King Enters.* v. *Thomas Twp.*,
        215 F. Supp. 2d 891 (E.D. Mich. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Martha Elizabeth, Inc.* v. *Scripps Networks Interactive, LLC*, __ F. Supp. 2d __,
        2011 U.S. Dist. LEXIS 49702 (W.D. Mich. May 9, 2011). . . . . . . . . . . . . . . . . . . . . 7

*Nat'l Socialist Party of Am.* v. *Village of Skokie*,
432 U.S. 43 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nutritional Health Alliance* v. *Shalala*,
144 F.3d 220 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Patsy v. Florida Bd. of Regents*,
457 U.S. 496 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Steffel* v. *Thompson*,
415 U.S. 452 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wright* v. *Roanoke Redev't & Hous. Auth.*,
479 U.S. 418 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statutes and Rules

MICH. ADMIN. R. 436.1611(1)(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MICH. COMP. LAW § 436.1209(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Other Authorities

http://www.american.com/archive/2006/november/
charlie-rangel (last visited May 20, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

http://www.dogfish.com/community/blogfish/members/sam/
no-bitches-in-michigan.htm (last visited May 19, 2011) . . . . . . . . . . . . . . . . . . . . 3

https://www.ttbonline.gov/ALFD/publicViewImage.do?id
=09055003000035 (last visited May 19, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

https://www.ttbonline.gov/ALFD/publicViewImage.do?id
=03128003000034 (last visited May 19, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

https://www.ttbonline.gov/ALFD/publicViewImage.do?id
=01065000000080 (last visited May 19, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

https://www.ttbonline.gov/ALFD/publicViewImage.do?id=
06033000000102 (last visited May 19, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

https://www.ttbonline.gov/ALFD/publicViewImage.do?id
=10139000000049 (last visited May 19, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

https://www.ttbonline.gov/colasonline/viewColaDetails.do?action=
publicFormDisplay&ttbid=07213001000135 (last visited May 19, 2011). . . . . . . . . . . . 3

https://www.ttbonline.gov/colasonline/viewColaDetails.do?action=
publicFormDisplay&ttbid=07335001000010 (last visited May 19, 2011) . . . . . . . . . . . . 3

https://www.ttbonline.gov/colasonline/viewColaDetails.do?action=
publicFormDisplay&ttbid=11047001000334 (last visited May 19, 2011) . . . . . . . . . . . . 3

WHAG-TV News Broadcast Video, "Heated Lawsuit Brews Over
Flying Dog's Controversial Beer Label," available at http://
your4state.com/fulltext/?nxd_id=175566 (last visited May 18, 2011). . . . . . . . . . . . . . . 1

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

PRELIMINARY STATEMENT

Flying Dog is entitled to a preliminary injunction not because Defendants' mores are out-of-touch with contemporary society,[1] but because Defendants' conduct conflicts with our nation's standards of governance dating back to 1791.

Defendants rest on the assertion that Flying Dog's speech is "repulsive," Def. Br. at 11—most emphatically, not a basis to ban speech in this country. Not content to rely upon an untenable save-the-children rationale, Defendants double down and claim that Flying Dog's speech can be entirely banned as harmful to *adults*. *Id.*, at 13.[2] Why, no less a tastemaker than Oprah Winfrey, advise Defendants, banished the word "bitch" from her show. Of course, serious broadcast journalists do not always share Oprah's sensitivities. *See, e.g.* WHAG-TV News Broadcast Video, "Heated Lawsuit Brews Over Flying Dog's Controversial Beer Label," available at http://your4state.com/fulltext/?nxd_id=175566 (news reporter using "bitch" on 7 p.m. broadcast in Western Maryland) (last visited May 18, 2011).

---

[1]*See* Def. Br. at 9 ("As words go, 'bitch' may be just about as close to the 'N'-word as descriptors for women get."). Suffice it to say, more offensive terms are in circulation today. Indeed, Defendants' desire to ban cartoonish depictions of a dog's body are impossible to square with the Supreme Court's extension of First Amendment protection to animated child pornography, which may be radically more offensive to contemporary society. *Ashcroft* v. *Free Speech Coalition*, 535 U.S. 234 (2002); *but see* Def. Br. at 13 ("the very name of the product inflicts harm. Any advertising pieces or restaurant menus that merely mention the name carry as much destructive force as the label itself."). Even if Defendants could regulate the placement of the RAGING BITCH label, the challenged provision imposes a *complete* ban.

[2]The Court is empowered to ensure that public officials understand the Constitution. *See, e.g. Dorr* v. *Weber*, 741 F. Supp. 2d 1010, 1021-22 (N.D. Ia. 2010) (requiring Sheriff who violated First Amendment to successfully complete "class [that] must provide college level instruction on the United States Constitution, including--at least in part--a discussion of the First Amendment.").

Responding to Flying Dog's invocation of, among others, the feminists at BITCH MAGAZINE celebrating the descriptive term for female dog, Pl. Br. at13, Defendants respond with citations to others who disagree. But this case does not turn on who has the better sense of humor, *contra* Def. Br. at 10 ("there is nothing amusing about the canine meaning of 'bitch.'"), or who cites the more persuasive feminists. Plaintiff's point is only that its speech is hardly within the definition of obscenity or even (protected) indecency.

Defendants effectively demonstrate that in a nation of 300 million people, even something as innocuous as the RAGING BITCH label will be controversial—but the First Amendment does not protect only speech inoffensive to government officials. Thus, Defendants are free to (erroneously) believe that "[t]he Raging Bitch label, as a whole, gives the impression that a woman's actions are subject to being controlled and then 'unleashed' at someone else's whim." Defendants' poor sense of humor aside, so what? Advocates for men's rights, children, and unconventional families might take umbrage at the various "bastard" labels approved by Defendants, but hurt feelings are not a basis for police action.

Indeed, regardless of what Defendants might think, the word "bitch" and its many derivatives are perfectly acceptable for use on beverage labels. All alcoholic beverage labels must be the subject of a "Certification/Exemption of Label/Bottle Approval," or "COLA," from the Treasury Department's Alcohol and Tobacco Tax Trade Bureau ("TTB"). The TTB maintains an online searchable COLA database, complete with full reproductions of the labels, at https://www.ttbonline.gov/colasonline/publicSearchColasAdvanced.do. As of this writing, searching for "bitch" as a fanciful or brand name returns 144 results dating to 1996, including

"Crazy Bitch" (registered by "Two Hoes" "Whinery"),[3] "Mad Bitch,"[4] "Jealous Bitch,"[5] "Sassy Bitch,"[6] "Sexy Bitch,"[7] and Twisted Sisters brand "Bitchin' Babes."[8]

Also approved by the Treasury Department is Dogfish Head Craft Brewery's "Miles Davis Bitches Brew,"[9] released in honor of the jazz classic's 40th anniversary utilizing original album artwork on the label—and banned in Michigan. *See* http://www.dogfish.com/community/ blogfish/members/sam/no-bitches-in-michigan.htm (last visited May 19, 2011). Presumably, the Defendants would also ban the Miles Davis album if only their jurisdiction extended to the regulation of music. But the First Amendment does not tolerate moral crusades of this sort, limited only by government officials' personal views of what is offensive.

---

[3] https://www.ttbonline.gov/colasonline/viewColaDetails.do?action=publicForm Display&ttbid=11047001000334 (last visited May 19, 2011) (label reads: "You certainly know who you are. The weirdo in the group. The one who appears to be the girl who has flown the coop! So here's the perfect wine for you when you get the itch to go out drinking with the girls because you're such a Crazy Bitch!").

[4] https://www.ttbonline.gov/ALFD/publicViewImage.do?id=01065000000080 (last visited May 19, 2011).

[5] https://www.ttbonline.gov/ALFD/publicViewImage.do?id=06033000000102 (last visited May 19, 2011).

[6] https://www.ttbonline.gov/colasonline/viewColaDetails.do?action=publicFormDisplay& ttbid=07213001000135 (last visited May 19, 2011).

[7] https://www.ttbonline.gov/colasonline/viewColaDetails.do?action=publicFormDisplay &ttbid=07335001000010 (last visited May 19, 2011) (label contains illustrations of nudes).

[8] https://www.ttbonline.gov/ALFD/publicViewImage.do?id=09055003000035 (last visited May 19, 2011) (label reads: "Everyone has or knows of at least one. She may be an acquaintance, a friend, or someone in your own family. You may be one yourself. But you gotta love her... when she's good, she's bad, and when she's bad she's even better! Celebrate her with a taste of this wine. She'll love you for it!").

[9] https://www.ttbonline.gov/ALFD/publicViewImage.do?id=10139000000049 (last visited May 19, 2011).

3

SUMMARY OF ARGUMENT

Most of Defendants' arguments do not merit much discussion. It makes no sense to suggest that discovery is necessary to determine whether the Flying Dog's speech is protected by the First Amendment. Nor can Defendants Pobur and Gaffney escape liability on the theory that they had "no part in the decisions that are a subject of this lawsuit." Def. Br. at 1 n.6. Pobur and Gaffney conduct the Commission's enforcement hearings, Complaint, ¶ 18; MICH. COMP. LAW § 436.1209(2), so they are at least subject to an injunction. And Defendants do not explain exactly how it is that Michiganders are a "captive audience," *id.* at 1, for any product in a store, considering they are not even a captive audience to the mail delivered to their home. *Bolger* v. *Youngs Prods. Corp.*, 463 U.S. 60 (1983).

Some of Defendants' other theories, however, warrant (brief) review, in particular, their theories on exhaustion, incitement, the label's artistic content, prior restraint and political correctness. Frequently asserted without support, these theories are all flatly untenable.

ARGUMENT

I.     ADMINISTRATIVE AND JUDICIAL EXHAUSTION ARE NOT REQUIRED TO SEEK FEDERAL REVIEW OF FEDERAL CIVIL RIGHTS VIOLATIONS.

Defendants suggest, without explicitly arguing in so many words, that Flying Dog cannot access this Court because it did not appeal the adverse licensing decision to the state circuit court. *See, e.g.* Def. Br. at 3. The argument would be clearly erroneous. It is beyond dispute that plaintiffs cannot be required to exhaust their state remedies prior to initiating a lawsuit under Section 1983. *See Patsy v. Florida Bd. of Regents*, 457 U.S. 496 (1982). "[T]he existence of a state administrative remedy does not ordinarily foreclose resort to § 1983." *Wright* v. *Roanoke*

4

*Redev't & Hous. Auth.*, 479 U.S. 418, 427-28 (1987). "When federal claims are premised on 42

U.S.C. § 1983 and 28 U.S.C. § 1343(3) -- as they are here -- we have not required exhaustion of

state judicial or administrative remedies, recognizing the paramount role Congress has assigned

to the federal courts to protect constitutional rights." *Steffel* v. *Thompson*, 415 U.S. 452, 472-73

(1974) (citations omitted).

  Indeed, Flying Dog is not even required to apply for a label license in order to challenge

the Commission's censorship rule.

> The Constitution can hardly be thought to deny to one subjected to the restraints of [a
> licensing law] the right to attack its constitutionality, because he has not yielded to its
> demands. As the ordinance [providing for unbridled licensing discretion] is void on its
> face, it was not necessary for appellant to seek a permit under it.

*City of Lakewood* v. *Plain Dealer Publishing Co.*, 486 U.S. 750, 756 (1988) (citations and

internal quotation marks omitted).

  Flying Dog is not claiming that Defendants improperly applied the standards in their rule.

Flying Dog is claiming that its speech is protected and the rule is unconstitutional. Federal courts

have primary jurisdiction to settle federal questions, and Flying Dog is entitled to seek relief here.

II. FLYING DOG'S BEER LABEL DOES NOT REMOTELY APPROACH FIRST
  AMENDMENT INCITEMENT STANDARDS.

  The notion that Defendants may ban Flying Dog's beer label because "the very name of

this beverage, together with the label's other dehumanizing characteristics, combined with its

consumption could motivate consumers toward destructive activity," Def. Br. at 12, depends not

only on farcical conjecture, but total disregard for First Amendment incitement doctrine.

Defendants have failed to even cite, much less discuss, any of the relevant First Amendment

incitement precedents, but an extensive discussion is not necessary to dispose of the theory.

5

"The prospect of crime . . . by itself does not justify laws suppressing protected speech."

*Ashcroft*, 535 U.S. at 245. "In protecting against the propensity of expression to cause violence,

states may only regulate that speech which is '*directed to* inciting or producing *imminent* lawless

action and is *likely to incite* or produce such action.'" *James* v. *Meow Media, Inc.*, 300 F.3d 683,

698 (6th Cir. 2002) (quoting and adding emphasis to *Brandenburg* v. *Ohio*, 395 U.S. 444, 447

(1969) (per curiam)).  In *Brandenburg,* the First Amendment was held to protect the speech of

heavily armed, cross-burning Klansmen threatening to kill people and overthrow the government.

The record does not disclose whether they were drinking beer, but it seems unlikely that fact

would have altered the outcome.[10]

"Federal courts . . . have generally demanded that all expression, advocacy or not, meet

the *Brandenberg* test before its regulation for its tendency to incite violence is permitted." *James*,

300 F.3d at 699 (citing *Dworkin* v. *Hustler Magazine, Inc.*, 867 F.2d 1188, 1199-1200 (9th Cir.

1989)) (other citation omitted). In *James*, the Sixth Circuit suggested the First Amendment

would protect the makers of violent video games and movies whose products were alleged to

incite a murderous rampage. The idea that Flying Dog's label might meet any of the three

*Brandenburg* factors, let alone all of them, is far-fetched.

III.     FLYING DOG'S LABEL CONTAINS PROTECTED ARTISTIC EXPRESSION.

Although the classification of Flying Dog's label as "commercial" or "non-commercial"

is completely irrelevant, since even commercial speech cannot be censored on grounds that it is

---

[10]It should seem obvious that a label for "Klan Beer," though utterly repugnant to many
people, would enjoy First Amendment protection. Various alcoholic beverages celebrate the
Confederacy, which signifies regional and historic pride for some, but evokes slavery and racism
for others. *See, e.g.* https://www.ttbonline.gov/ALFD/publicViewImage.do?id=03128003000034
(last visited May 19, 2011).

"offensive," Flying Dog notes that a recent decision of this Court supports its claim that the RAGING BITCH label contains protected artistic expression.

Earlier this month, Chief Judge Maloney had occasion to consider the First Amendment interests in "Bitchin' Kitchen" as a title for a television show. *Martha Elizabeth, Inc.* v. *Scripps Networks Interactive, LLC*, __ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 49702 (W.D. Mich. May 9, 2011). Owners of a trademark for "Bitchen Kitchen" brought an infringement action against sellers of competing cooking products utilizing the moniker "Bitchin' Kitchen," as well as the broadcaster of a related television show by the same name. The Court's thoughtful fifty-three page opinion revealed that the competing "Bitchen Kitchen" and "Bitchin' Kitchen" enterprises are wildly successful. Although Defendants ban *all* uses of "this particular five-letter word," Def. Br. at 12, Michigan and, indeed, worldwide consumers, value the brand.[11]

Indeed, the First Amendment interest in "Bitchin' Kitchen," as the title of a television show, was sufficient to warrant rejection of a trademark injunction. "[T]he court determines that the Cooking Channel television show title 'Bitchin' Kitchen' certainly has artistic relevance to the underlying work, that is, to the content, tone, style, purpose, and intended appeal of Nadia G's performance mixing comedic, informational, and titillating material and moods during the course of the show." *Martha Elizabeth*, at *80-*81. Likewise, the RAGING BITCH label can, and does, contain "artistic relevance" to Flying Dog's expression well beyond the mere proposition of a commercial transaction. The Cooking Channel show could also have been titled, "Cooking

---

[11]Thankfully, the Liquor Commission's authority does not extend to kitchenware, because if Defendants had their way, the Pentwater, Michigan "Bitchen Kitchen Store," related website, and its similarly-named competitors would all be shuttered to prevent the state's "captive" adult population from being harmed by the word "bitch."

Show #1," just like RAGING BITCH can be titled, "Flying Dog Beer #12," but the First

Amendment secures greater expressive freedom.

IV. FLYING DOG'S LABEL IS PROTECTED EVEN AS COMMERCIAL SPEECH.

Defendants have no answer to the fact that twice the Supreme Court has held, in no

uncertain terms, that classifying speech as "commercial" does not permit the government to

restrict it for being offensive. "'[W]e have consistently held that the fact that protected speech

may be offensive to some does not justify its suppression.' We specifically declined to recognize

a distinction between commercial and noncommercial speech that would render this interest a

sufficient justification for a prohibition of commercial speech." *Bolger*, 463 U.S. at 71-72

(quoting *Carey* v. *Population Servs. Int'l*, 431 U.S. 678, 701 & n.28 (1977)).

Heedless of this strict bar to their first commercial speech argument, Defendants propose

another—that prior restraint standards do not apply to commercial speech. Defendants at least

mention that one circuit has rejected their theory, Def. Br. at 15 n.85 (citing *Nutritional Health

Alliance* v. *Shalala*, 144 F.3d 220 (2d Cir. 1998)). They could have added two more: *Desert

Outdoor Advertising* v. *City of Moreno Valley*, 103 F.3d 814 (9th Cir. 1996); *In re Search of

Kitty's East*, 905 F.2d 1367 (10th Cir. 1990).

But while curiously Defendants cite to an unpublished Sixth Circuit opinion they claim

notes the issue is open, they fail to cite to another Sixth Circuit opinion, albeit also unpublished,

that rejected their theory. In *Bosley* v. *WildWetT.com*, 70 U.S.P.Q.2d 1537, 2004 U.S. App.

LEXIS 11028 (6th Cir. Apr. 21, 2004), the panel unanimously reversed entry of a preliminary

injunction, finding that the defendant had a strong likelihood of arguing the injunction violated

its First Amendment rights:

8

> We are not persuaded, at this stage of the proceedings, that the defendant's speech is outside the protections of the First Amendment. Even if the defendant's website is viewed as purely commercial, some circuits have "indicated that the requirement of procedural safeguards in the context of a prior restraint indeed applies to commercial speech."

*Bosley*, at *2-*3 (citation omitted). Indeed, courts routinely apply prior restraint doctrines in the area of commercial speech. *See, e.g. King Enters.* v. *Thomas Twp.*, 215 F. Supp. 2d 891 (E.D. Mich. 2002) (sign ordinance). And there is absolutely no reason not to. Considering commercial speech is entitled to significant protection, it is not too much to ask that prior restraints directed at such speech hew to objective standards, and provide adequate due process protection.

## V.     POLITICAL CORRECTNESS IS NOT A VALID REGULATORY INTEREST.

Although Defendants' original decision invoked only their "health, welfare and safety" rationale, Defendant Samona has now decreed that RAGING BITCH is also "sexist." This hardly helps the Defendants' cause. The label censorship rule is *entirely* unconstitutional.

Of course "sexist" and "racist" speech enjoy First Amendment protection. If Nazis can march in Skokie, *Nat'l Socialist Party of Am.* v. *Village of Skokie*, 432 U.S. 43 (1977), it stands to reason they could also promote their own brand of beer. Nobody has to like it. But while an overtly Nazi label would meet most people's definition of racism, that term, and its counterpart, "sexism," can be overutilized. For example, one leading Member of Congress famously remarked that advocating for tax cuts is racist. http://www.american.com/ archive/2006/ november/charlie-rangel (last visited May 20, 2011).

Nida Samona lacks authority to decree for everyone else what is or is not "sexist." It is one thing to define the concept of sexism, quite another to issue objective standards for what qualifies as sexist—even if the government could ban "sexism," which, considering the First

Amendment, it most assuredly cannot. Unsurprisingly, MICH. ADMIN. R. 436.1611(1)(d) contains no objective standards. Politically correct nonsense may at times be amusing on a college campus, but the First Amendment commands that it cannot attain the force of law.

CONCLUSION

It is simply too bad that Michigan's Liquor Control Commissioners are offended by Flying Dog's label. Much more importantly, their censorship offends the First Amendment.

The solutions to both problems are simple. With respect to the safeguarding of Defendants' delicate sensibilities, they should refrain from purchasing Flying Dog's beer—the loss is theirs, but consumption of RAGING BITCH is not mandatory. Defendants can also stay home, and avoid restaurants or any other public places where they might encounter speech they dislike, including stores where they might encounter offensive kitchenware or Miles Davis albums. As for Defendants' violation of the First Amendment, that problem must be remedied, at this stage, by a preliminary injunction.

Dated: May 23, 2011        Respectfully Submitted,

Alan Gura
GURA & POSSESSKY, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax: 703.997.7665
alan@gurapossessky.com


By:    /s/ Alan Gura_____
       Alan Gura

Attorneys for Plaintiff Flying Dog Brewery, LLLP

10